**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff<br><br>            v.<br><br>OMAR SOSA-GONZÁLEZ,<br><br>        Defendant. | **Crim. No. 25-124(GMM)(HRV)** |

## OPINION AND ORDER

Pending before the Court are Defendant Omar Sosa-González's ("Mr. Sosa") *Motion to Suppress* and Magistrate Judge Héctor L. Ramos-Vega's ("Magistrate Judge Ramos-Vega") *Report and Recommendation.* (Docket Nos. 27 and 39). With the benefit of a complete evidentiary record, the Court **ADOPTS** Magistrate Judge Ramos-Vega's *Report and Recommendation* and hereby **DENIES** Mr. Sosa's *Motion to Suppress.*

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2025, a grand jury issued an *Indictment* against Mr. Sosa, charging him of being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). (Docket No. 11). The charge arises from a *Complaint*, filed after a municipal police officer arrived at the scene of a traffic accident in which Mr. Sosa was involved. (Docket No. 1). Mr. Sosa has moved to suppress the evidence that was seized at the scene of the traffic accident. (Docket No. 27).

Criminal No. 25-124(GMM)(HRV)
Page - 2 -

The facts of this case occurred on March 8, 2025. On that date, around 11:00 a.m., Mr. Sosa was driving his mother's car, without a driver's license, along the Roberto Clemente Avenue in Carolina, when he rear-ended another driver. (Docket Nos. 27 at 2; 32 at 1; 39 at 7). After pulling over, yet prior to getting out of the vehicle, Mr. Sosa placed a firearm, ammunitions, cigarettes, a wallet, and other items inside a fanny pack, and placed the fanny pack on his person. (Docket No. 39 at 7). According to his testimony, Mr. Sosa did this because, knowing that he lacked a driver's license, he feared that the police would search the vehicle and find the firearm (Id. at 8).

Mr. Sosa testified that, once he got out of the vehicle, he asked the other driver to not call the police but rather wait until his mother arrived at the scene because he did not have a driver's license. (Id.). Mr. Sosa further proposed to the other driver to make the traffic complaint in his mother's name - even though she was not the one driving the vehicle - but the other driver did not agree and proceeded to call the police. (Id.).

About ten to twenty minutes later, Agent Frank Badillo ("Agent Badillo") from the Carolina Municipal Police's motorized unit arrived alone at the scene to investigate the traffic accident. (Docket Nos. 27 at 2; 32 at 1; 39 at 8). Ms. Sosa stood beside his mother's vehicle until Agent Badillo interviewed him. (Id.) From

Criminal No. 25-124(GMM)(HRV)
Page - 3 -

this point forward, Mr. Sosa and Agent Badillo have conflicting accounts of the events that transpired.

Mr. Sosa indicates that, during his interview with Agent Badillo, he had the fanny pack placed across his chest, with the bag portion to his back – and with the zipper fully closed - thus not directly visible to Agent Badillo. (Docket No. 27 at 2). Agent Badillo indicates, however, that Mr. Sosa had the fanny pack hanging over his left shoulder with a one-inch opening of the zipper, through which half-an-inch of a firearm was protruding and, hence, visible in plain sight. (Docket Nos. 1-2; 39 at 5).

It is undisputed that Mr. Sosa did not reach for the bag at any time, did not open the bag, and did not touch its contents. (Docket No. 39 at 5). It is also undisputed that Agent Badillo asked Mr. Sosa twice whether he had a weapon inside the bag, to which Mr. Sosa responded in the negative; and that Agent Badillo asked Mr. Sosa whether he possessed a firearm license, to which Mr. Sosa also responded in the negative. (Docket No. 39 at 5, 8).

Agent Badillo, subsequently, reached over to grab Mr. Sosa's fanny pack. (Docket No. 27 at 2-3). Agent Badillo opened the fanny pack and discovered one black Glock pistol (model 23, 0.40 caliber, serial number PZR992) loaded with one Glock magazine with 15 rounds of ammunition capacity; one additional Glock magazine of 13 rounds of ammunition capacity; and a total of twenty-three (23) rounds of

Criminal No. 25-124(GMM)(HRV)
Page – 4 –

0.40 caliber ammunition. (Docket 1 ¶ 11). Agent Badillo placed Mr.

Sosa under arrest, thus initiating the criminal process at hand.

*See* (Docket No. 1).

On July 1, 2025, Mr. Sosa filed a *Motion to Suppress*

requesting that "all evidence in this case resulting from the

unlawful search of his property in violation of the Fourth

Amendment be suppressed as fruit of the poisonous tree." (Docket

No. 27 at 1). Mr. Sosa contends that "the firearm and ammunition

were not in plain view" and that "[t]he version of events provided

by Agent Badillo is entirely not credible." (Id. at 3). On July

22, 2025, the Government filed *The United States of America's*

*Opposition to Motion to Suppress* indicating Agent Badillo's

actions were adequate pursuant to the 'plain view' doctrine, and

that Mr. Sosa's recollection of the events are self-serving (Docket

No. 32 at 2-4).

The Court referred the matter to Magistrate Judge Ramos-Vega.

(Docket No. 28). After holding a Suppression Hearing on August 14,

2025, Magistrate Judge Ramos-Vega issued a *Report and*

*Recommendation* on August 28, 2025, recommending the denial of Mr.

Sosa's *Motion to Suppress*. (Docket No. 39). Upon written request,

Mr. Sosa was granted an extension of time to file objections to

the *Report and Recommendation* (Docket No. 41) – yet objections

were never filed with the Court.

Criminal No. 25-124(GMM)(HRV)
Page – 5 –

## II.   Legal Standard

A.   Reports and Recommendations

District Courts may refer a pending motion to a Magistrate Judge for a *Report and Recommendation*. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a). In turn, adversely impacted parties may "serve and file specific written objections to the proposed findings and recommendations" within fourteen days of receipt of a magistrate judge's report and recommendation." 28 U.S.C. § 636(b)(1)(C).

"Absent objection by [the adversely affected party], [a] district court ha[s] a right to assume that [the affected party] agrees to the magistrate's recommendation." M. v. Falmouth Sch. Dep't, 847 F.3d 19, 25 (1st Cir. 2017) (*citing* Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985)).  Thus, "a party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals." Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

Accordingly, absent an objection by the Defense, the Court needs only to satisfy itself that Magistrate Judge Ramos-Vega's *Report and Recommendation* does not contain a plain error in its findings, in order for the Court to adopt the same. López-Mulero

Criminal No. 25-124(GMM)(HRV)
Page – 6 –

v. Vélez-Colón, 490 F. Supp. 2d 214, 217-18 (D.P.R. 2007) (*citing* Templeman, 770 F.2d at 247).

B.    Warrantless Searches and Seizures

The Fourth Amendment protects against warrantless searches and seizures.  U.S. Const. Amend. IV; Katz v. United States, 389 U.S. 347, 357 (1967). Accordingly, evidence obtained by an unlawful search or seizure must be suppressed. United States v. Bienvenue, 632 F.2d 910, 913 (1st Cir. 1980). However, the 'plain view' doctrine has been recognized as carve-out to this general rule. Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971); United States v. Hamie, 165 F.3d 80, 82 (1st Cir. 1999); United States v. Caggiano, 899 F.2d 99, 103 (1st Cir. 1990).

Under the 'plain view' doctrine, an officer may seize evidence without a warrant when two conditions are met. First, "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton v. California, 496 U.S. 128, 136 (1990). Meaning, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." Id. at 137.

Second, "not only must the item be in plain view, [but] its incriminating character must also be 'immediately apparent'" to the officer. Id. at 136. "The term 'immediately apparent' has been

Criminal No. 25-124(GMM)(HRV)
Page – 7 –

defined as sufficient to constitute probable cause to believe it is evidence of criminal activity." <u>Hamie</u>, 165 F.3d at 83 (*quoting* <u>United States v. Giannetta</u>, 909 F.2d 571, 578 (1st Cir. 1990)). It requires "more than hunch, guesswork, and cop-on-the-beat intuition, but less than proof beyond a reasonable doubt or a near certainty that the seized item is incriminating." <u>Giannetta</u>, 909 F.2d at 579 (internal quotations and citations omitted). "There must be enough facts for a reasonable person to believe that the items in plain view may be contraband or evidence of a crime." <u>Id.</u>

### III. ANALYSIS

Considering that Magistrate Judge Ramos-Vega's *Report and Recommendation* is unopposed, this Court has only to be certain that there is no "plain error" as to the Magistrate Judge's conclusions, in order to adopt the same. Hence, after a careful analysis, the Court finds no "plain error" and agrees with the Magistrate Judge's conclusions, as supplemented herein.

As stated by Magistrate Judge Ramos-Vega, the present case involves "two versions of the events[,] neither of which can be discarded outright as inherently incredible." (Docket No. 39 at 12). Accordingly, "both versions of [the] events are possible." (<u>Id.</u> at 9 no.3). *See* <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 575 (1985) (explaining that when "a trial judge's finding is based on his decision to credit the testimony of [some] witnesses, each of

Criminal No. 25-124(GMM)(HRV)
Page - 8 -

whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error"); *see also* United States v. Henderson, 463 F.3d 27, 32 (1st Cir. 2006) (recognizing that "a district court's choice between two plausible competing interpretations of the facts cannot be clearly erroneous").

Given that both versions are plausible, the Court's decision comes down to an issue of credibility. In the case at hand, Magistrate Judge Ramos-Vega found "after considering the totality of the circumstances . . . that [A]gent Badillo's testimony is deserving of credibility" and "decline[d] to assign credibility to the version of Sosa-González." (Docket No. 39 at 14). This determination is based on number of factors, including: Agent Badillo did not exhibit evasiveness or motives for fabrication during his direct and cross-examination; when confronted with omissions in the incident report that he prepared, Agent Badillo admitted that some details were not included and acknowledged that he did not recall other details; and Agent Badillo's "tone and demeanor remained steadfast" and "without hesitation throughout his testimony"; Agent Badillo has over 30 years of experience as a police officer, hence he possesses the requisite knowledge to identify a firearm; Agent Badillo does not have a prior history of

effectuating an arrest for illegal possession of a firearm on the basis of 'plain view' during a routine car accident investigation; during the Suppression Hearing, no evidence was presented that would raise an inference, or suspicion, that Agent Badillo was looking to score a firearm arrest; and, beyond a general claim by the defense that his version "defies logic", Agent Badillo's testimony proceeded unimpeached. *See* (Id. at 12-16).

On the other hand – despite having provided a plausible version of the events – two primary factors weight against assigning credibility to Mr. Sosa's testimony. Namely, Mr. Sosa was on supervised release at the time of the incident and "candidly admitted . . . that he does not wish to spend more time in prison" – which provides a motive for fabrication. *See* (Id. at 14). In addition, Mr. Sosa "proposed to the other driver to not call the police until his mother arrived at the scene, and to have the complaint falsely reflect that it was his mother who was driving," which entails an act dishonesty that is tantamount to fraud – and further invites the inference that Mr. Sosa is willing to act in a manner that would allow him to avoid facing the consequences of his actions. *See* (Id.).

As consistently held by the Supreme Court, "a district judge need not hear the live testimony of a witness in order to accept the credibility determination of a magistrate judge." United

Criminal No. 25-124(GMM)(HRV)
Page – 10 –

States v. Hernandez-Rodriguez, 443 F.3d 138, 147-48 (1st Cir. 2006)
(*citing* United States v. Raddatz, 447 U.S. 667, 680-81 (1980)).

Importantly, "absent special circumstances, a district judge may not reject the credibility determination of a magistrate judge without first hearing the testimony that was the basis for that determination." Hernandez-Rodriguez, 443 F.3d at 148. Put simply, a District Judge "abuse[s] its discretion" when it rejects a Magistrate Judge's determination of credibility without hearing first-hand the testimony in question. Id. ("A district judge may not reject a magistrate's findings as to the credibility of a witness without hearing the witness testify first-hand").

"[G]reat deference is given to the [Magistrate Judge's] findings" in credibility determinations because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." United States v. Andujar-Ortiz, 575 F. Supp. 2d 373, 378 (D.P.R. 2008) (*citing* Anderson, 470 U.S. at 575 (1985)). As such, the Court defers to Magistrate Judge Ramos-Vega's credibility findings regarding the witnesses' testimonies, as set forth in the *Report and Recommendation*.

Moreover, considering that the Defense failed to submit objections to the *Report and Recommendation* – the Court finds that there is no plain error in the Magistrate Judge's *Report and*

Criminal No. 25-124(GMM)(HRV)
Page – 11 –

*Recommendation*. Hence, the *Report and Recommendation* is hereby
adopted in its totality, as supplemented herein.

## IV.    CONCLUSION

For the reasons set forth above, Mr. Sosa's *Motion to Suppress*
is **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on October 28, 2025.

/s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE